UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERRY L. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 1:15-cv-00929-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Sherry L. Scott is not disabled.

## Introduction

Ms. Scott applied on August 17, 2012, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since August 30, 2011. Acting for the Commissioner of the Social Security Administration following a hearing on August 19, 2013, an administrative law judge ("ALJ") found that Ms. Scott is not disabled. The Appeals Council denied

review of the ALJ's decision on April 10, 2015, rendering the ALJ's decision for the Commissioner final. Ms. Scott timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Scott contends that "[s]ubstantial evidence fails to support the ALJ's erroneous determination that the claimant's alcohol-substance use disorder combined with her mental impairments materially contributed to her disability, rendering her not disabled." (Br. at 12). In addition, Ms. Scott argues that the ALJ erroneously rejected Ms. Scott's testimony regarding her hip and back pain and migraine headaches on the ground these ailments were not supported by objective evidence.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Scott's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).[1] Ms. Scott is disabled if her impairments are of such severity

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and

that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

---

regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Administrative Proceedings

Ms. Scott was born in 1968 and was 43 years old on the alleged onset of her disability in August 2011. At the hearing, Ms. Scott and a vocational expert testified.

At step one, the ALJ determined that Ms. Scott had not engaged in substantial gainful activity since August 30, 2011, the alleged onset date. At step two, the ALJ found Ms. Scott had the following severe impairments: (1) breathing dysfunction described as asthma, chronic obstructive pulmonary disease, episodes of acute bronchitis, and remote radiograph suggesting emphysema, all with tobacco/marijuana use and (2) mental impairments described as major depressive disorder, anxiety/panic disorder with agoraphobia, and polysubstance dependence (cannabis and opioids). At step three, the ALJ concluded that Ms. Scott did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

Considering Ms. Scott's impairments, including substance use, the ALJ determined Ms. Scott can perform light work, as defined in the regulations, with

5

postural, environmental, and mental limitations. The ALJ further determined: she can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and push and pull up to the same weight ranges; she can stand, walk, and sit six to eight hours in an eight hour work day; she can only occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps, may have only occasional exposure to humidity, wetness, extremes of temperature, and dust, fumes, or other pulmonary irritants, and may have only occasional exposure to workplace hazards such as unprotected heights or machinery with fast moving parts. (R. 17).

With respect to Ms. Scott's mental impairments, the ALJ concluded: (1) Ms. Scott can understand and remember simple, routine tasks but cannot sustain or frequently carry out such simple and routine tasks, and (2) Ms. Scott has sufficient common sense understanding to carry out instructions and deal with several concrete variables in standardized situations, but cannot sustain this mental ability consistent with the normal demands of a work day. The ALJ concluded that Ms. Scott's "ability to sustain this capacity in the presence of substance use is limited as the claimant will likely be absent or off task for up to 20% of the work time." The ALJ also found that Ms. Scott can appropriately interact with supervisors but can only occasionally interact with coworkers and the general public. (*Id.*)

At step four, the ALJ concluded Ms. Scott is unable to perform any past relevant work. At step five, the ALJ determined that no jobs exist in significant numbers in the national economy that Ms. Scott can perform and therefore, she was disabled. (*Id.* at 18-19).

However, because there was evidence of a substance use disorder, the ALJ proceeded to determine whether the substance use disorder was a contributing factor material to the determination of disability. The ALJ concluded if Ms. Scott stopped the substance use: (1) Ms. Scott would continue to have a severe impairment or combination of impairments; (2) Ms. Scott would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments; (3) Ms. Scott would have the RFC to perform light work with certain postural, environmental, and mental limitations (discussed in detail below); (4) Ms. Scott would be unable to perform past relevant work; and (5) there were a significant number of jobs in the national economy that Ms. Scott could perform. The ALJ found that Ms. Scott's substance use disorder was a contributing factor material to the determination of disability because Ms. Scott would not be disabled if she stopped the substance use. Therefore, the ALJ ultimately concluded Ms. Scott was not entitled to disability benefits. (R. 19-26).

## Analysis

### I.  Disability benefits are prohibited if an applicant's substance abuse is material to the disability.

In 1996, Congress amended the Social Security Act to prohibit an award of disability benefits if an applicant's alcoholism or drug addiction is "material" to the disability. Under the Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The regulations require a two-step analysis when disability may be

7

linked to alcoholism or drug abuse to answer the question whether the claimant would still be disabled if she stopped her substance abuse. *See Kangail v. Barnhart,* 454 F.3d 627, 628 (7th Cir. 2006) (issue for the ALJ "is whether, were the applicant not a substance abuser, she would still be disabled"); *Harlin v. Astrue,* 424 Fed. Appx. 564, 567 (7th Cir. 2011) (same).

The ALJ first determines whether the claimant is disabled "without segregating out any effects that might be due to substance abuse." *Mayes v. Astrue,* 2008 WL 126691 at *6 (S.D. Ind. Jan. 10, 2008) (citations omitted). The ALJ next evaluates "which of the [claimant's] limitations . . . would remain" if the claimant stopped her substance abuse and determines if those remaining limitations would be disabling. *Id.* If the remaining limitations would not be disabling, then the ALJ can conclude that substance abuse "is a contributing factor material to the determination of disability" and deny benefits on that ground. *See id.* The claimant bears the ultimate burden to show that her substance abuse is *not* a contributing factor material to finding her disabled. *Harlin,* 424 Fed. Appx. at 567.

### A. **The ALJ utilized the correct analytical framework.**

The ALJ properly analyzed Ms. Scott's impairments, both with and without segregating the effects of her substance abuse. After determining that certain of Ms. Scott's impairments were severe, the ALJ first considered Ms. Scott's impairments, including the substance use, to determine if her impairments met or medically equaled a listing. The ALJ analyzed Listings 3.02 (chronic pulmonary insufficiency) and Listing 3.03 (asthma). The ALJ determined that the evidence did

8

not show reduced lung functioning to the level of impairment specified in any listing. Nor did the evidence show hospitalization with the frequency specified in any of the listings in the 3.00 series. (R. 15).

The ALJ determined that Ms. Scott did not meet the criteria of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders). In reaching this conclusion, the ALJ analyzed the B criteria. To satisfy the B criteria, a claimant's mental disorder must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. "Marked" means "more than moderate but less than extreme." Listing 12.00C (Assessment of level of severity). The regulation explains that a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

The ALJ found that Ms. Scott—as a substance abuser—had a mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace. Ms. Scott did not experience any episodes of decompensation. Nor did Ms. Scott meet the C criteria. As a result, the ALJ concluded that Ms. Scott did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 16).

9

The ALJ then determined Ms. Scott's RFC and available jobs, as discussed in detail above, ultimately concluding that Ms. Scott was disabled when factoring in the substance use. (R. 19).

The ALJ's next task was to determine Ms. Scott's functioning if she were not abusing substances. The ALJ determined that Listings 3.02, 3.03, 12.04, and 12.06 were not met. Ms. Scott still had a mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace. However, the ALJ found it was "especially true" that Ms. Scott was capable of presenting herself in a clean, kempt manner when she refrained from substance abuse. With respect to social functioning, Ms. Scott "made good eye contact when she refrained from substance abuse." Regarding concentration, persistence, or pace, Ms. Scott "was more engaged in therapy when not using substances." The ALJ again determined that Ms. Scott did not experience any episodes of decompensation, nor did she meet the C criteria. (R. 20).

The critical difference in Ms. Scott's functioning if she were not abusing substances was in the ALJ's RFC analysis and determination. The ALJ determined Ms. Scott had the RFC to perform light work, as defined in the regulations, with postural, environmental, and mental limitations. Ms. Scott's physical and environmental limitations remained the same. However, Ms. Scott's mental limitations changed. The ALJ concluded Ms. Scott had the capacity to understand, remember, and carry out simple, routine tasks. The ALJ determined Ms. Scott had the ability to utilize common sense understanding to carry out instructions, deal

with several concrete variables in standardized situations, and, significantly, could sustain this ability consistent with the normal demands of a work day including regular breaks and meal periods. (*Id.*)

Again, the ALJ found that Ms. Scott had the capacity to appropriately interact with supervisors but had the capacity for occasional interaction with the coworkers and the general public. (*Id.*)

While Ms. Scott was unable to perform past relevant work, there were a significant number of jobs in the national economy that Ms. Scott could perform. Therefore, the ALJ found that Ms. Scott's substance use disorder was a contributing factor material to the determination of disability because she would not be disabled if she stopped the substance use.

Ms. Scott argues:

> In the instant case the ALJ repeatedly combined the claimant's mental impairments with her substance abuse to find she was disabled, without distinguishing which of the two factors predominated in causing her disability, i.e. "the evidence shows that the claimant's substance abuse and mental impairments combined to form extensive limitations in her functioning." (R.17) The ALJ having determined that she was totally disabled due to her combined impairments including the substance abuse (R. 18), the determination that the claimant could perform some jobs was contrary to the evidence and was not supported by the evidence, requiring reversal of the denial decision.

(Br. at 14).

This argument ignores the two-part process that the ALJ was required to undertake in light of Ms. Scott's substance abuse. The ALJ first analyzed whether Ms. Scott was disabled without segregating out any effects that might be attributed

11

to her substance use. The ALJ then analyzed whether Ms. Scott's remaining limitations would be disabling if she stopped her substance use. The fact that the ALJ found Ms. Scott disabled when factoring in her substance abuse did not preclude the ALJ from finding Ms. Scott was not disabled if she were to stop her substance abuse.

Relying on the opinion rendered by Dr. Yee following her consultative mental status examination, Ms. Scott argues that *Harlin,* 424 Fed. Appx. at 564, requires reversal of the ALJ's decision. However, this case does not bear resemblance to the facts in *Harlin*, in which the ALJ illogically rejected an opinion from the claimant's treating psychiatrist that the claimant's mental impairment was the primary cause of disability and that the claimant would remain disabled even without substance use – the only evidence in the record regarding the seriousness of the claimant's impairments without drug use. In this case, Dr. Yee, a consultative examiner, rendered no such opinion, and her report was not the only evidence in the record regarding Ms. Scott's impairments without substance use.

Ms. Scott maintains that, in *Harlin*, the Seventh Circuit "ruled that 'a tie goes to the claimant', i.e. if the causation was not clearly defined, the claimant must be found disabled." (Br. at 14). However, the Seventh Circuit did not so rule. In fact, the "tie goes to the claimant" language comes out of an Eighth Circuit opinion the claimant cited to the court. The Seventh Circuit did not adopt this standard. *See* 424 Fed. Appx. at 568. Furthermore, the portions of the ALJ's decision that Ms. Scott cites as erroneously combining her substance use and other impairments

12

comprise the first part of the required two step process, where the ALJ must consider the substance use in combination with the other impairments.  Ms. Scott fails to mention or address the entire second part of the ALJ's analysis that segregated out the effects of Ms. Scott's substance use.

The *Harlin* claimant also relied on Social Security Teletype EM 96-200, an Emergency Teletype issued by the Social Security Administration in 1996, asserting that EM 96-200 "direct[ed] a finding of disability unless evidence establishe[d] that the claimant would not be disabled if she stopped using drugs or alcohol." *Id.*  In addressing the applicability of this document to the case before it, the Seventh Circuit said, "*Assuming without deciding* that the Teletype provisions govern the situation . . . we believe that the ALJ here has not adequately disentangled the effects of Harlin's drug abuse from those of her other impairments." *Id.*  The grounds the Seventh Circuit relied on for this determination consisted of the ALJ's inappropriate rejection of the only record evidence of the claimant's impairments during periods of sobriety. *Id.*  Furthermore, in 2013, the Social Security Administration issued a Social Security Ruling (SSR) that rendered EM 96-200 obsolete.  SSR 13-2p, Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism, *available at:* https://www.ssa.gov (last visited Aug. 5, 2016).

As Ms. Scott recognizes in her brief (Br. at 13), the Seventh Circuit reversed and remanded in *Harlin* because the ALJ failed to adequately explain why he discounted the opinion of the claimant's treating psychiatrist and failed to support his conclusion that the claimant's substance use materially contributed to her

13

disability. Here, while the ALJ gave limited weight to certain of Dr. Yee's conclusions, the ALJ properly explained her reasoning for the weight assigned. Specifically, the ALJ gave limited weight to Dr. Yee's "opinion that the claimant has a 'great deal' of social interaction trouble, difficulty meeting new people, and difficulty with persistence due to pessimism." (R. 24) (citation omitted). The ALJ's grounds for the limited weight were that "Dr. Yee's opinion is vague and does not quantify the claimant's abilities in a function-by-function manner. The opinion states a series of vague limitations and does not describe the most the claimant affirmatively *could* do." (*Id.*) (emphasis in original). The ALJ considered the GAF scores assigned by Dr. Yee and others, and explained why she gave the GAF scores limited weight. (*Id.*) As will be discussed in greater detail below, the ALJ also supported her conclusion that Ms. Scott's substance use materially contributed to her disability.

The fact remains that the claimant bears the ultimate burden of proving that her substance use is not a contributing factor material to disability. *Harlin*, 424 Fed. Appx. at 567. The ALJ utilized the proper framework in determining that Ms. Scott failed to meet this burden.

> **B. The ALJ's determination that Ms. Scott's substance use disorder was a contributing factor material to the determination of disability is supported by substantial evidence.**

Overall, the ALJ determined that Ms. Scott's substance abuse "was more extensive than she testified and reports show improved functioning when she reduced her substance use." (R. 24-25). The ALJ specifically considered and

14

discussed evidence in the record to support this conclusion. First, the ALJ considered Ms. Scott's own testimony. Significantly, Ms. Scott testified that she did not abuse substances during periods of work reflected in her earnings record. (R. 22, 43). The ALJ determined that this testimony "support[ed] an increase in functional abilities" when Ms. Scott was not abusing substances. (R. 22). The ALJ also determined that Ms. Scott's testimony about her reduced substance use since the alleged disability onset date was not supported by her own contemporaneous reports to treating sources. (*Id.*)

The ALJ then analyzed Ms. Scott's mental health treatment records and contrasted Ms. Scott's functioning during the periods of time where Ms. Scott stopped or reduced her use of substances with periods of use or heavier use. (R. 20, 22-23). For example, in October 2012, during her consultative mental status examination with Dr. Yee, Ms. Scott reported she had not had a drink in weeks. (R. 22, 367). Ms. Scott told Dr. Yee that she did not use any other drugs except for the occasional pain pill, and it had been six months since she had used other drugs. (R. 367). Although Ms. Scott was still anxious, she was oriented, adequately groomed, and cooperative. She completed serial seven testing, demonstrated intact memory skills, completed simple math problems, and concentrated throughout the examination. (R. 22). Dr. Yee's report concluded that alcohol and polysubstance dependence, among other things, may negatively impact Ms. Scott's persistence. (R. 369).

A short time later, Ms. Scott resumed her substance use. She exhibited reduced judgment, disheveled appearance, and poor hygiene. She was upset and made little eye contact. Ms. Scott reported that she did not want to stop using substances at this time. The ALJ found "[s]uch results st[ood] in contrast to her more functional presentation at the consultative examination." (*Id.*)

The ALJ appropriately considered Ms. Scott's impairments with the substance use and without the substance use. Although the evidence is mixed, the court finds that the ALJ adequately supported her conclusion that Ms. Scott's substance use was a contributing factor material to the determination of disability. The ALJ accounted for Ms. Scott's mental impairments without substance use in her RFC by limiting her to simple, routine tasks, limiting her interaction with coworkers and the general public, and limiting her exposure to work place hazards. This court may not reweigh the evidence. There was no error.

## II. There was no error in the ALJ's determination regarding Ms. Scott's hip and back pain and migraines.

Ms. Scott argues that the ALJ erred in rejecting her testimony regarding hip pain, back pain, and migraine headaches because the ALJ "determined that the pain was not sufficiently proven by 'objective' evidence." (Br. at 15). Ms. Scott maintains that subjective evidence alone is sufficient to support a finding of disability, citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004), without explanation. (Br. at 15) However, Ms. Scott then states that an ALJ "is required to consider a claimant's subjective complaints of pain *if supported by medical evidence and findings.*" (*Id.*) (emphasis added). Citing *Clifford v. Apfel*, 227 F.3d at 872,

16

again without explanation, Ms. Scott contends that an ALJ's "conclusory rejection of the claimant's testimony because supposedly unsupported by objective medical evidence is reversible error." (Br. at 15). While it is not entirely clear what Ms. Scott is arguing, the court construes Ms. Scott's argument as one regarding the ALJ's credibility assessment.

The cases to which Ms. Scott cites are unavailing. First, *Carradine* is factually inapposite. In that case, the claimant suffered from a number of physical ailments and also had been diagnosed with a somatization disorder, a psychosomatic illness (physical distress of psychological origin). 360 F.3d at 754. The claimant, corroborated by her husband, testified that her conditions caused her such severe pain that she could not work full time. *Id.* The ALJ rejected the claimant's testimony about the severity of her pain for two reasons: (1) the primarily psychological origin of the severity of the pain; and (2) the inability of medical examiners and treating physicians to find objective evidence to support the claimant's account of her pain. *Id.*

The Seventh Circuit determined the ALJ "could not get beyond the discrepancy between [the claimant's] purely physical ailments, which although severe were not a plausible cause of disabling pain, and the pain to which [the claimant] testified." *Id.* at 755. The ALJ "failed to take seriously the possibility that the pain was indeed as severe as [the claimant] said but that its origin was psychological rather than physical." *Id.* The claimant presented evidence, including a long history of significant treatment for pain and a clinical

17

psychologist's opinion that her attention and concentration were impaired by her focus on pain, that went beyond "a merely self-serving, uncorroborated claim of pain by a malingerer." *Id.* at 755-56. The court also rejected the ALJ's determination that certain evidence of the claimant's daily activities was inconsistent with her testimony. *Id.* at 756.

In *Clifford,* the claimant testified to disabling pain caused by her conditions. 227 F.3d at 868, 872. The ALJ discredited her subjective complaints regarding her pain and her allegation that she was unable to work. *Id.* at 868. The ALJ determined without explanation that the claimant's testimony regarding the limitations on her daily activities was not supported by the medical evidence. *Id.* at 872. However, the record was "replete with instances where [the claimant] sought medical treatment for pain symptoms related to her physical impairments, including the arthritic condition for which she [was] taking pain medication." *Id.* Instead of explaining why the objective medical evidence did not support the claimant's complaints of disabling pain, the ALJ simply listed her daily activities as substantial evidence that the claimant did not suffer disabling pain. *Id.* However, minimal daily activities "do not establish that a person is capable of engaging in substantial physical activity." *Id.* The Seventh Circuit determined it lacked "a sufficient basis upon which to uphold the ALJ's credibility determination." *Id.* On remand, the Seventh Circuit directed the ALJ to conduct a "reevaluation of [the claimant's] complaints of pain, with due regard for [a treating physician's] opinion and the full range of medical evidence." *Id.*

The ALJ's decision shows why she provided no accommodations within the RFC based on Ms. Scott's complaints of migraines and hip pain: at step two, she found that these ailments were not even medically-determined impairments, i.e., there was no objective medical evidence of their existence. (R. 15). Only when an underlying medically-determinable impairment is shown that could reasonably be expected to produce the claimant's pain or other symptoms must the ALJ then evaluate the effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529.

With respect to Ms. Scott's back pain, the ALJ made several observations. First, she found that while there was objective medical evidence (an x-ray) of degenerative changes in the thoracic spine, the back impairment was non-severe because the x-ray report provided no detail as to the extent of the degenerative changes and there was no evidence to "link those changes to particular, work-related limitations." (R. 15). Second, the ALJ noted that the record showed only minimal treatment for any sort of musculoskeletal abnormality and that Ms. Scott could walk normally. (R. 24). Third, she discussed the extent of Ms. Scott's description at the hearing of symptoms that limit her work capacity. (R. 21-22). The symptoms to which she testified did not include any references to back pain. Fourth, the RFC actually provides several weight-bearing and postural limitations even though they were primarily directed to Ms. Scott's breathing impairments, especially with exertion. The RFC limits Ms. Scott to lifting/carrying and pushing/pulling only 10 pounds frequently and 20 pounds occasionally, and limits

19

her to only occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs. Ms. Scott has failed to show that these work limitations insufficiently accommodate her pain symptoms. Considering all of these factors, the court finds that Ms. Scott has failed to demonstrate any error in the ALJ's evaluation of the credibility of Ms. Scott's statements about the limiting effects of her impairments.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Scott is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: August 24, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system